IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 19 2009

Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| Abdoulaye Tall,<br>950 25th Street, NW#309N,<br>Washington, DC 20037,<br>Tel: 202-684-0557,<br><br>        Plaintiff,<br><br>vs.<br><br>Credit Protection Association,<br>14001 Dallas Parkway, Suite 1050,<br>Dallas, TX, 75240,<br><br>Comcast of Montgomery County,<br>20 W Gude Dr.<br>Rockville, MD 20850,<br><br>        Defendants | Case: 1:09-cv-02196<br>Assigned To : Bates, John D.<br>Assign. Date : 11/19/2009<br>Description: Pro Se Gen. Civil |

## COMPLAINT

1.    This is an action under the Fair Debt Collection Practices Act, hereinafter "FDCPA", 15 U.S.C. 1692, the Fair Credit Reporting Act, hereinafter "FCRA", 15 U.S.C 1681.

2.    Jurisdiction in this case is founded upon 15 U.S.C 1692 (k), and 15 U.S.C 1681(p), which grants the federal District Courts jurisdiction to hear this action without regard to the amount in controversy.

3.    The court has also subject matter jurisdiction based on diversity of citizenship, and given that the amount in controversy exceeds $75,000; This Court enjoys personal jurisdiction over defendants because their offending actions were made while

plaintiff was and remains a resident of the District of Columbia. This Court enjoys venue under 28 U.S.C. § 1391(a)(2).

4. The plaintiff, Mr. Abdoulaye Tall is an individual residing in Washington, DC.

5. Credit Protection Association is a Collection Agency, a corporation incorporated under the laws of Texas.

6. Comcast of Montgomery County herein after "Comcast" is a corporation organized under the laws of the State of Pennsylvania.

7. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, each of the defendants sued herein was the agent and employee of each of the remaining defendants and was at all times acting within the purpose and scope of such agency and employment.

8. Mr. Abdoulaye Tall , the plaintiff contracted with defendant Comcast, in August 2005 for the provision of cable service TV and internet at the apartment he conjointly leased with a roommate in Montgomery County, State of Maryland. The Comcast account number was 09569 612654-05-2.

9. On or shortly before November 28th 2005, plaintiff noticed a disruption in his cable service. On November 28, 2005, plaintiff and his roommate paid by phone to Comcast the cable bill for an amount of $80.The bill sent by Comcast for that period through December 1st 2005 amounted to $66.42. The credit card was charged by the defendant Comcast, in the amount of $80.

10. Defendant failed to credit plaintiff's account for the payment made. Defendant also failed to restore plaintiff's service.

11. Plaintiff, in an effort to resolve the issue and have his cable service restored, made many calls to defendant Comcast, and sent receipt of payment to Comcast by fax, as directed by Comcast's agents. Despite these efforts, defendant Comcast failed to restore plaintiff's cable services.

12. On December 31st, 2005, Defendant Comcast's agent came to plaintiff's apartment and picked up their equipments. The agent signed a discharge confirming having recuperated the equipments.

13. Shortly afterwards, defendants Comcast and Credit Protection Association claimed that plaintiff owed Defendant Comcast money. Defendants alleged plaintiff owed money for: i) unpaid service, for the period up to December 1st 2005 amounting to $66.42; ii) $32.99 for service for the month of December 2005- during which time plaintiff's cable service was disconnected; iii) for unreturned equipment amounting to $50, and iv) approximately $4 in collection fees, late fees and taxes; for a total amount of $153.

14. Plaintiff promptly disputed defendants claim, by phone and in writing. Plaintiff also submitted evidence including receipt of payment made and discharge for equipment return.

15. Defendants failed to verify disputed claim, yet pursued collections actions.

16. Defendants furnished a derogatory account to Equifax, a credit reporting agency which they updated and republished repeatedly.

17. Plaintiff disputed this account with Equifax, Comcast and Credit Protection Association at several instances. The latest dispute, was made in September 2009.

18. In August 2008, plaintiff applied for a loan to pay for the medical treatment of a family member. Plaintiff request was denied based on the derogatory report furnished by defendants. Moreover, the credit limit on plaintiff's application for a Credit Card account was substantially reduced. Plaintiff was also requested to pay a higher interest rate on his credit cards accounts.

19. Plaintiff further attempted to resolve the issue using many forums, including by writing directly to the defendants, and filling complaints with various state agencies.

20. Plaintiff also formally disputed directly with defendant Comcast, Credit Protection Agency in September 2009.

21. Equifax received the dispute letter on September 13, 2009. A few hours after receiving the dispute letter, Equifax responded to plaintiff that their reinvestigation is completed and that " The results are: This creditor is currently reporting a zero balance for this account. If you have additional questions about this item please contact Credit Protection, PO Box 802068, Dallas TX 75380-2068 " . Defendant Credit Protection Association and defendant Comcast received plaintiff's dispute letter in September, 2009. Defendant Credit Protection Association has not responded to the dispute letter it received. Neither has defendant Comcast.

22. All of the above mentioned defendants' conduct was malicious, willful and deliberately without regard to plaintiff's well being.

### Count I: Willful Violations of the Federal FCRA Statutes

23. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-22 above.

24. On August and September 2009, Plaintiff disputed in writing with Equifax, defendants Comcast, and Credit Protection Association, the false and derogatory reports in plaintiff's credit report. Plaintiff disputed in writing to defendants that he did not owe defendant Comcast any money, that the account did not become first delinquent on October 2005.

25. A few hours after receiving the letter, Equifax responded by letter to plaintiff confirming the account following "reinvestigation". Equifax described its reinvestigation method: "Equifax contacted each source directly and our investigation is now concluded. If you have any additional questions or concerns, please contact the source of that information directly". Defendants Comcast of Montgomery and Credit Protection Association did not respond to dispute by Plaintiff.

26. The reinvestigation methods described in Equifax's reinvestigation results falls short of the standard set by the FCRA. Defendants are in violation of 15 U.S.C Section 1681s-2(b)(1)(A).

27. Defendant Credit Protection and Comcast reported, updated, and republished the account they furnished to the Credit Reporting Agency Equifax, after receiving dispute by Plaintiff. Defendants failed to mention that the item was disputed. By failing to notify of consumer dispute when reporting, updating, republishing or confirming account to the Credit Reporting Agency Equifax, Defendants, Equifax, Comcast and Credit Protection Association are in noncompliance with 15 U.S.C 1681 i (c).

28. By repeatedly updating and confirming their claims following disputes by plaintiff and pursuing collection actions, without notifying of consumer dispute

defendants demonstrated that their non-compliance with the abovementioned provisions is willful.

29. Defendant Comcast and Credit Protection Association were notified directly by plaintiff of disputed information. By failing to conduct an investigation of the dispute and notifying plaintiff of the outcome of the investigation, and by doing so repeatedly, the defendants are in willful non-compliance with 15 USC 1681i(a)(1).

30. Defendants non-compliance with the above mentioned provisions is also ongoing. Defendants mentioned that they will continue to report the account in the future. Substantial punitive damages will deter defendants from future non-compliance.

### Count II: Non-compliance with Federal FDCPA statutes

31. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-30 above;

32. Defendants Credit Protection Association and Comcast have misrepresented the amount, or legal status of the debt they are attempting to collect which, per se is a violation of Section 807 (2), 15. U.S.C. 1692 e(2).

33. Defendants failed, repeatedly, to verify debt properly disputed by plaintiff, while continuing their collections efforts. By doing so, defendants are in violation of provisions of Section 809 (b), 15 U.S.C 1692 g (b).

34. Defendant reported, updated, and confirmed disputed account without reporting that the debt is disputed. By failing, repeatedly, to communicate that a disputed debt is disputed, defendants are in non-compliance with 15 U.S.C 1692 e (8).

35. By repeatedly validating and confirming their claims following disputes by plaintiff and pursuing collection actions, defendants demonstrated that their non-compliance with the abovementioned provisions is willful.

36. Defendants non-compliance with the above mentioned provisions is also ongoing. Defendants mentioned that they will continue to report the account in the future. Substantial punitive damage will deter defendants from future non-compliance with the law.

### Count III Defamation

37. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-36 above;

38. The actions of defendants, as described above, constitutes defamation by the defendants.

39. More specifically, the plaintiff do not owe defendant Comcast money nor has he been delinquent in paying debt to defendant. By reporting, repeatedly, misleading and false derogatory information, and making such reporting public on Equifax websites, defendants engaged in Defamation. The defendants defamatory statements are liable per se.

40. Defendants false accusations were published on defendant Equifax's website and were publicly accessed as of November 2009 by several entities.

41. The defendants conducted no investigation concerning the truth or veracity of their defamatory statement.

42. In fact the defendants defamatory statements were made intentionally and without concern whether the statements were true. The false statements have harmed the plaintiff.

44. The defendant's defamatory statements were made intentionally or with reckless disregard to the truth or veracity of the statement. The defendants knew their statement would harm the plaintiff.

45. The defendants defamatory statements were made public, and were intended to be made public.

46. The actions of the defendants have been sufficiently outrageous as to entitle plaintiff, to punitive damages.

47. Defendant have stated intention to pursue defamatory actions in the future. Punitive damages are appropriate to deter the defendant from future outrageous conduct.

**Count IV: Invasion of Privacy- Intrusion and Publicity given to private life**

48. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in paragraphs 1-47 above;

49. Defendants made public plaintiff's private life and affaires which he intended as private. The defendants' publicity given to plaintiffs' private life was and is an invasion of privacy.

50. Plaintiff personal affaires are not a matter of public concern. The defendants' actions and statements were not consistent with any legitimate concern to the public.

51. Defendant's intrusion was highly offensive to a reasonable person.

52. The continuous use of third parties to disseminate private information concerning the plaintiff is sufficiently outrageous to entitle plaintiff to an award of punitive damages. Punitive damages will deter the defendants' future outrageous conduct

### Count V: Breach of Contract

53. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in Paragraphs 1-52 above.

54. By disseminating and giving publicity to plaintiff's private affaires and concerns beyond the allowed purposes set forth in the " Customer Privacy Policy", and the Cable Act 47 USC 551 (c) (1), defendant Comcast is in breach of contract.

55. After 1) having disconnected plaintiff's service even when plaintiff had been current on his payments; 2) refusing to restore plaintiff service even after receiving proof of payment; 3) failing to investigate disputes by plaintiff, defendant used and continues to use third parties to disseminate private, derogatory, and false information on plaintiff. Defendant's conduct is outrageous to a reasonable person.

55. Defendant have stated intention to pursue ongoing breach in the future. Substantial punitive damages are appropriate to deter defendant from future breach.

56. **WHEREFORE,** plaintiff prays judgment against defendants, jointly and each of them, as follows:

a. A cease and desist injunctive order on offending actions;

b. An injunctive order to defendants Credit Protection Association and Comcast to suspend, or cease to conduct any ongoing and future collection activities until the Court is fully satisfied that proper procedures are in place which fully comply with the law;

  c.  For compensatory damages, including for causing Plaintiff to suffer emotional distress, mental anguish;

  d.  For statutory damages;

  e.  For punitive damages of $500,000 per defendant for each count;

  f.  For reasonable attorney fees and Court costs herein incurred;

  g.  For any such other and further relief as the court may deem proper;

## JURY TRIAL

Jury trial is requested

Date November 19th , 2009

_____

Abdoulaye Tall, Pro Se

950 25th Street, NW, #309N

Washington, DC 20037

E-mail: atall7@hotmail.com

Telephone Number: 202-684-0557