# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ABDOULAYE TALL,

      **Plaintiff,**

         v.

COMCAST OF POTOMAC, LLC, et al.,

      **Defendants.**

Civil Action No.  09-2196 (JDB)

## ORDER

Abdoulaye Tall, proceeding pro se, brings this suit against Comcast of Potomac, LLC[1] and the Credit Protection Association.[2]  He alleges that he purchased cable services from Comcast of Potomac while living in Maryland in 2005, Compl. ¶ 8, and that a subsequent dispute with the company led it to report improperly to third parties that Tall had failed to pay his cable bill, thereby ruining his credit, Compl. ¶ 18.

Before the Court is [2] Comcast of Potomac's motion to dismiss for lack of personal jurisdiction.  The Court may exercise personal jurisdiction over a non-resident defendant either by finding general jurisdiction over the party, or by finding specific jurisdiction based on "acts of a defendant that touch and concern the forum."  Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981); accord Kopff v. Battaglia, 425 F. Supp. 2d 76, 81 (D.D.C. 2006).  Here, Tall contends only that this Court has specific jurisdiction over Comcast of Potomac.  He

---

[1] Comcast of Potomac is incorrectly named in the complaint as Comcast of Montgomery County.  See Comcast's Mem. in Supp. of Mot. to Dismiss ("Comcast's Mem.") [Docket Entry 2], at 1.

[2] The Association has not responded to Tall's complaint, and therefore the Clerk of Court has entered default against it.  See Clerk's Entry of Default [Docket Entry 17].

bears the burden of establishing the Court's personal jurisdiction over Comcast of Potomac.  <u>See</u> <u>Mwani v. bin Laden</u>, 417 F.3d 1, 7 (D.C. Cir. 2005).  Hence, he must allege "specific facts upon which personal jurisdiction may be based," <u>Blumenthal v. Drudge</u>, 992 F. Supp. 44, 53 (D.D.C. 1998), and cannot rely on conclusory allegations, <u>see</u> <u>Elemary v. Philipp Holzmann A.G.</u>, 533 F. Supp. 2d 116, 121 (D.D.C. 2008).

To establish specific jurisdiction, Tall must plead facts that (1) bring the case within the scope of the District of Columbia's long-arm statute, D.C. Code § 13-423, and (2) satisfy the constitutional requirements of due process.  <u>See</u> GTE New Media Servs. Inc. v. Bell South Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000); <u>United States v. Ferrara</u>, 54 F.3d 825, 828 (D.C. Cir. 1995).  The District's long-arm statute states that courts may exercise jurisdiction over any person who, acting directly or through an agent, engages in the following conduct:

(1)     transacts any business in the District of Columbia;

(2)     contracts to supply services in the District of Columbia;

(3)     causes tortious injury in the District of Columbia by an act or omission in the District of Columbia; or

(4)     causes tortious injury in the District of Columbia by an act or omission outside the District of Columbia if the person "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

D.C. Code § 13-423(a)(1)-(4).  Tall contends that this Court may exercise jurisdiction over Comcast of Potomac based either on section 13-423(a)(1) or on section 13-423(a)(4).  <u>See</u> Pl.'s Opp'n at 2.

For Tall to establish personal jurisdiction over Comcast of Potomac under section 13-423(a)(1), he must demonstrate that "(1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had

minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice." FC Inv. Group LC v. IFX Markets, Ltd., 479 F. Supp. 2d 30, 38 (D.D.C. 2007) (internal quotation marks omitted).  Tall concedes in his opposition to Comcast of Potomac's motion to dismiss, however, that the conduct giving rise to his injuries occurred "outside of the District of Columbia."  Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") [Docket Entry 6], at 3.  Therefore, even if Comcast of Potomac transacts business in the District of Columbia, Tall's injuries did not arise from that conduct. Personal jurisdiction under section 13-423(a)(1) is therefore inappropriate.

For Tall to establish personal jurisdiction over Comcast of Potomac under section 13-423(a)(4), he must demonstrate that he suffered an injury in the District of Columbia as a result of an act or omission outside the District by Comcast of Potomac, and that Comcast of Potomac "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."[3]  Comcast of Potomac's conduct in the District, however, need not be related to the injuries he alleged.  See Etchebarne-Bourdin v. Radice, 982 A.2d 752, 763 (D.C. 2009).

Here, Tall alleges that Comcast of Potomac acts in the District of Columbia for purposes of section 13-423(a)(4) by (1) maintaining an internet presence through the websites <comcast.com> and <comcast.net>, Pl.'s Opp'n at 4; (2) engaging in federal regulatory proceedings, id. at 4-5; (3) retaining District of Columbia counsel, id. at 5; (4) targeting District of Columbia residents with advertisements through the websites <superpages.com> and <comcast.com>, id. at 3-4; and (5) acting through agents that themselves act in the District, id. at

_____

[3] Comcast of Potomac does not dispute that any injury Tall suffered occurred in the District of Columbia.  See Pl.'s Opp'n at 3.

5-6.  None of the first three facts is sufficient to demonstrate that Comcast of Potomac engages in a persistent course of conduct in the District.  See GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1349-50 (D.C. Cir. 2000) ("mere accessibility of the defendants' websites" does not establish persistent course of conduct); Savage v. Bioport, Inc., 460 F. Supp. 2d 55, 62 (D.D.C. 2006) (defendant's contacts with government agency do not establish persistent course of conduct); Cellutech, Inc. v. Centennial Cellular Corp., 871 F. Supp. 46, 50 (D.D.C. 1994) (retaining District of Columbia counsel generally does not establish persistent course of conduct). See generally Crane v. Carr, 814 F.2d 758, 763 (D.C. Cir. 1987) ("isolated event[s]" insufficient to demonstrate persistent course of conduct).

Furthermore, there is no evidence in the record to demonstrate either that Comcast of Potomac has placed advertisements in <superpages.com> and <comcast.com> targeting District of Columbia residents, see Reply Aff. of Mary C. Kane [Docket Entry 9], ¶¶ 3, or that the Credit Protection Association or Equifax is its agent.  Tall, however, moves for discovery to support these two allegations.

First, he requests information on whether, and how many, individuals subscribe to Comcast of Potomac while living in the District of Columbia, through the website <comcast.com>.  Pl.'s Sur Reply [Docket Entry 10], at 6.  Although it is undisputed that Comcast of Potomac does not operate that website, information about District residents who used the website to purchase Comcast of Potomac services could be relevant depending on the relationship between Comcast of Potomac and the entity that operates <comcast.com>.[4]  See Shapiro, Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 22 (D.D.C. 2000) ("Ordinarily,

---

[4] The Court assumes without deciding that it would have jurisdiction over the entity that operates <comcast.com>.

a defendant corporation's contacts with a forum may not be attributed to shareholders, affiliated corporations, or other parties.  An exception exists, however, where affiliated parties are alter egos of a corporation over which the Court has personal jurisdiction; in that case the corporation's contacts may be attributed to the affiliated party for jurisdictional purposes." (citation omitted)); see also D.C. Code § 13-423(a) ("court may exercise personal jurisdiction over a person[] who acts directly or by an agent").

Second, Tall seeks information about the relationship between Comcast of Potomac and the two entities with which it does business -- Equifax and the Credit Protection Association. See Pl.'s Sur Reply at 9.  He alleges that Comcast of Potomac does business in the District through both of those entities.  And, as with the entity that operates <comcast.com>, if either Equifax or the Credit Protection Association is an agent of Comcast of Potomac, or its alter ego, the Court may attribute Equifax's or Credit Protection Association's contacts with the District to Comcast of Potomac.  See Shapiro, Lifschitz & Schram, 90 F. Supp. 2d at 22; see also D.C. Code § 13-423(a).

Nevertheless, permitting Tall to engage in jurisdictional discovery at this stage may be unnecessary.  Instead, in its discretion, the Court will require Comcast to answer several interrogatories regarding its relationships with Equifax, the Credit Protection Association, and the entity that operates <comcast.com>.  See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." (internal quotation marks omitted)); id. ("[T]he court may inquire by affidavits or otherwise, into the facts as they exist.").  These responses may supply the information necessary to evaluate adequately whether the three entities at issue are alter egos or agents of Comcast of Potomac.  See Shapiro, Lifschitz & Schram, 90 F. Supp. 2d at 23 (alter ego

relationship turns, in part, on whether there is "unity of interest and ownership [such] that the separate personalities of the corpporation[s] . . . no longer exist"); Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088, 1097 (D.C. 2008) (agency relationship dependent on "the parties' consent to establish a principal-agent relationship" and "evidence that the activities are subject to principal's control").

Therefore, in the interests of justice and judicial economy, the Court will reserve judgment on Comcast of Potomac's motion to dismiss, as well as on Tall's requests for jurisdictional discovery, pending responses to the questions below.  It is hereby

**ORDERED** that, by not later than July 2, 2010, Comcast of Potomac shall respond to the following questions by affidavit or declaration, lodged with the Court through a notice of filing:

1. What is the Comcast entity that operates (i.e. manages and determines the content of) <comcast.com>?

2. What is the nature of the relationship between Comcast of Potomac and the entity that operates <comcast.com>?

    a. What percentage of Comcast of Potomac is owned by the entity that operates <comcast.com>, and vice versa?

    b. Do Comcast of Potomac and the entity that operates <comcast.com> share funds, staff, or property?

    c. Do Comcast of Potomac and the entity that operates <comcast.com> have any corporate officers or directors in common?

    d. What role does the entity that operates <comcast.com> play in the advertising and sales decisions of Comcast of Potomac?

    e. How does the entity that operates <comcast.com> decide to put information concerning Comcast of Potomac on the website?

    f. Does Comcast of Potomac have the authority to control the actions of the entity that operates <comcast.com>?

     g.     How does the contractual relationship, if any, between Comcast of Potomac and the entity that operates <comcast.com> allocate authority over the actions of the entity that operates <comcast.com>?

3.     Does Comcast of Potomac derive any revenue through <comcast.com>?

4.     During the period 2007 through the present, has Comcast of Potomac advertised to, or solicited business from, potential customers who live in the District but are moving to Maryland or Virginia?

     a.     During this period, how many, and what percentage of its customers did Comcast of Potomac sign up for cable service while they still lived in the District of Columbia?

5.     What is the nature of the relationship between Comcast of Potomac and Equifax?

     a.     What percentage of Comcast of Potomac is owned by Equifax, and vice versa?

     b.     Do Comcast of Potomac and Equifax share funds, staff, or property?

     c.     Do Comcast of Potomac and Equifax have any corporate officers or directors in common?

     d.     Does Comcast of Potomac have the authority to control Equifax's actions in the District of Columbia?

     e.     How does the contractual relationship, if any, between Comcast of Potomac and Equifax allocate authority over Equifax's actions in the District of Columbia?

6.     What is the nature of the relationship between Comcast of Potomac and the Credit Protection Association?

     a.     What percentage of Comcast of Potomac is owned the Credit Protection Association, and vice versa?

     b.     Do Comcast of Potomac and the Credit Protection Association share funds, staff, or property?

     c.     Do Comcast of Potomac and the Credit Protection Association have any corporate officers or directors in common?

     d.     Does Comcast of Potomac have the authority to control the Credit Protection Agency's actions in the District of Columbia?

   e.  How does the contractual relationship, if any, between Comcast of Potomac and the Credit Protection Agency allocate authority over the Credit Protection Agency's actions in the District of Columbia?

  And it is further **ORDERED** that Tall may file a response to Comcast of Potomac's filing by not later than July 16, 2010.

  **SO ORDERED**.

_____/s/_____
JOHN D. BATES
United States District Judge

Date: June 17, 2010