UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABDOULAYE TALL,

Plaintiff,

v.

COMCAST OF POTOMAC, LLC, et al.,

Defendants.

Civil Action No. 09-2196 (JDB)

## MEMORANDUM OPINION

Abdoulaye Tall, proceeding pro se, brings this suit against Comcast of Potomac, LLC, and the Credit Protection Association.[1] He alleges that he purchased cable services from Comcast of Potomac while living in Maryland in 2005, Compl. ¶ 8, and that a subsequent dispute with the company led it to report to third parties that he had failed to pay his cable bill, thereby ruining his credit, Compl. ¶ 18. He brings claims for violations of two federal statutes -- the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. -- as well as for common law defamation, invasion of privacy, and breach of contract.

Before the Court is Comcast of Potomac's motion to dismiss for lack of personal jurisdiction. After the parties briefed that motion, the Court determined that they had failed to consider two factual issues potentially affecting the Court's jurisdiction over Comcast of Potomac. The Court therefore propounded interrogatories regarding those issues. See June 17, 2010 Order [Docket Entry 19], at 5-6. Although Tall had requested jurisdictional discovery in

---

[1] The Association failed to respond to Tall's complaint, and therefore the Clerk of Court has entered default against it. See Clerk's Entry of Default [Docket Entry 17].

his opposition to Comcast of Potomac's motion to dismiss, the Court concluded that the parties' interrogatory responses might obviate the need for such discovery. The parties have now responded to the Court's inquiries by affidavit and, for the reasons set forth below, the Court will grant Comcast's motion and deny Tall's request for further jurisdictional discovery.

## BACKGROUND

In 2005, Tall contracted with Comcast of Potomac to obtain cable TV and internet service to his Montgomery County, Maryland apartment. Compl. ¶ 8. He alleges that in November of that year he noticed "a disruption in his cable service," Compl. ¶ 9, which Comcast of Potomac "failed to restore" despite numerous phone calls, Compl. ¶¶ 10-11. He contends that he suffered this disruption even though he overpaid his cable bill by approximately $14, Compl. ¶ 9, and "sent receipt of payment to Comcast by fax, as directed by Comcast's agents," Compl. ¶ 11. Tall's efforts were apparently fruitless, as "Comcast's agent came to plaintiff's apartment and picked up their equipments [sic]. The agent signed a discharge confirming have recuperated the equipments [sic]." Compl. ¶ 12.

Thereafter, "defendants Comcast and Credit Protection Association claimed that plaintiff owed defendant Comcast" approximately $153 for unpaid service, unreturned equipment, and late fees and taxes. Compl. ¶ 13. Tall alleges that he "promptly disputed defendants claim [sic], by phone and in writing," Compl. ¶ 14, and that although Comcast of Potomac and the Credit Protection Agency "failed to verify [the] disputed claim," they nevertheless pursued collection actions, Compl. ¶ 15. He asserts, to this end, that they "furnished a derogatory account to Equifax, a credit reporting agency." Compl. ¶ 16. As a result, Tall contends that he was unable to obtain a loan "to pay for the medical treatment of a family member," had his credit limit reduced, and "was also requested to pay a higher interest rate on his credit card accounts."

Compl. ¶ 18.

Tall states that he has continued to "dispute[ the charges] with Equifax, Comcast and [the] Credit Protection Association at several instances," the latest in September 2009. Compl. ¶¶ 17, 19-20. According to him, Equifax responded to his latest inquiry by indicating that "[t]h[e] creditor is currently reporting a zero balance for this account. If you have additional questions about this item please contact Credit Protection." Compl. ¶ 21. He alleges that neither the Credit Protection Association nor Comcast has responded to his latest queries, and he therefore brings this action.

**ANALYSIS**

Under Federal Rule of Civil Procedure 12(b)(2), plaintiffs bear the burden of establishing a court's personal jurisdiction over a defendant. "[P]laintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." Mwani v. bin Laden, 417 F.3d 1, 8 (D.C. Cir. 2005). Nevertheless, plaintiffs must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and they cannot rely on conclusory allegations, see Elemary v. Philipp Holzmann A.G., 533 F. Supp. 2d 116, 121 (D.D.C. 2008).[2]

The Court may exercise personal jurisdiction over a non-resident defendant, such as Comcast of Potomac, either by finding general jurisdiction over the party, or by finding specific

---

[2] A plaintiff generally need make only a prima facie showing of the pertinent jurisdictional facts in order to meet his burden. See Mwani, 417 F.3d at 8. But "where the parties are permitted to conduct discovery on the jurisdictional issue, a plaintiff must prove that personal jurisdiction exists by a preponderance of the evidence." Shapiro, Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 22 (D.D.C. 2000). Here, Tall has failed to make out even a prima facie case of personal jurisdiction.

jurisdiction based on "acts of a defendant that touch and concern the forum." Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981); accord Kopff v. Battaglia, 425 F. Supp. 2d 76, 81 (D.D.C. 2006). Here, Tall contends only that this Court has specific jurisdiction over Comcast of Potomac.

To establish specific jurisdiction over a non-resident defendant, Tall must plead facts that (1) bring the case within the scope of the District of Columbia's long-arm statute, D.C. Code § 13-423, and (2) satisfy the constitutional requirements of due process. See GTE New Media Servs. Inc. v. Bell South Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000); United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995). The District's long-arm statute states that courts may exercise jurisdiction over any person who, acting directly or through an agent, engages in the following conduct:

(1) transacts any business in the District of Columbia;

(2) contracts to supply services in the District of Columbia;

(3) causes tortious injury in the District of Columbia by an act or omission in the District of Columbia; or

(4) causes tortious injury in the District of Columbia by an act or omission outside the District of Columbia if the person "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

D.C. Code § 13-423(a)(1)-(4). Tall's causes of action must "aris[e] from" the acts conferring jurisdiction over the defendant. See D.C. Code. § 13-423(b); Jackson v. Loews Wash. Cinemas, Inc., 944 A.2d 1088, 1092 (D.C. 2008).

In his opposition to Comcast of Potomac's motion to dismiss, Tall asserted that this Court

may exercise jurisdiction over Comcast of Potomac based either on section 13-423(a)(1) or on section 13-423(a)(4). In its previous order, which did not resolve Comcast of Potomac's motion, the Court indicated that it could not exercise personal jurisdiction over Comcast of Potomac pursuant to section 13-423(a)(1). See June 17, 2010 Order at 3 ("[E]ven if Comcast of Potomac transacts business in the District of Columbia, Tall's injuries did not arise from that conduct."). The Court confirms that conclusion here. Therefore, section 13-423(a)(4) is the only potential avenue through which the Court may exercise personal jurisdiction over Comcast of Potomac.

Tall alleges that Comcast of Potomac acted in the District of Columbia for purposes of section 13-423(a)(4) in five ways: by "(1) maintaining an internet presence through the websites <comcast.com> and <comcast.net>; (2) engaging in federal regulatory proceedings; (3) retaining District of Columbia counsel; (4) targeting District of Columbia residents with advertisements through the websites <superpages.com> and <comcast.com>; and (5) acting through agents that themselves act in the District." Id. at 3-4.[3] The Court previously concluded that the first three assertions could not demonstrate that Comcast of Potomac engaged in a persistent course of conduct in the District for purposes of section 13-423(a)(4). See id. at 4. Further, it found that there was no evidence in the record to support the latter two allegations. See id. The Court again confirms those conclusions here.

Nevertheless, Tall sought jurisdictional discovery to substantiate his allegation that Comcast of Potomac acts in the District through several entities with which it does business: the entity that operates Comcast's websites -- which Comcast of Potomac has now identified as

---

[3] Comcast of Potomac does not dispute that any injury Tall suffered occurred in the District of Columbia. See June 17, 2010 Order at 3 n.3.

Comcast Cable Communications Management, LLC ("Comcast Management") -- Equifax, and the Credit Protection Association. Although "[o]rdinarily[] a defendant corporation's contacts with a forum may not be attributed . . . to other parties," an exception exists where the other party is an alter ego or agent of the defendant. Shapiro, Lifschitz & Schram, 90 F. Supp. 2d at 22 (citation omitted); see also D.C. Code § 13-423(a) ("court may exercise personal jurisdiction over a person[] who acts directly or by an agent").[4]

The parties did not consider Comcast of Potomac's relationship with Comcast Management, Equifax, and the Credit Protection Association in briefing Comcast of Potomac's motion to dismiss. Accordingly, the Court gave them an opportunity to answer several questions regarding those relationships, reasoning that the parties' responses could obviate the need for jurisdictional discovery. See June 17, 2010 Order at 5. Comcast of Potomac responded by filing a declaration from Mary C. Kane, senior counsel for Comcast of Potomac's parent company. See Decl. of Mary C. Kane ("Kane Decl.") [Docket Entry 20], at 1. Tall filed an "opposition" to the Kane declaration, alleging that "defendant omitted to furnish relevant information in their response to the Court's well calibrated requests." Pl.'s Response to Third Kane Aff. ("Pl.'s Response") [Docket Entry 21], at 1. Based in part on those responses, the Court concludes that there is no evidence in the record to support Tall's claim that Comcast of Potomac acts in the District of Columbia through either an alter ego or an agent.

---

[4] Tall also requested discovery to determine how many District residents who use a Comcast website have purchased services from Comcast of Potomac. See June 17, 2010 Order at 4. But because Comcast of Potomac does not operate any Comcast website, this inquiry is relevant only if the entity that operates Comcast's websites is an alter ego or agent of Comcast of Potomac.

I.  **Comcast of Potomac's Relationship with Comcast Management**

   A.   Alter Ego

To establish that Comcast Management is an alter ego of Comcast of Potomac, Tall must show "'by affirmative evidence' that there is not only 'unity of ownership and interest' between the two corporations, but also 'use of the corporate form to perpetrate fraud or wrong.'"  Jackson, 944 A.2d at 1095 (quoting Vuitich v. Furr, 482 A.2d 811, 815 (D.C. 1984)); accord Shapiro, Lifschitz & Schram, 90 F. Supp. 2d at 23 ("(1) is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?").  Relevant factors include "whether corporate formalities have been disregarded, and whether there has occurred an intermingling of corporate and personal funds, staff, property."  Vuitich, 482 A.2d at 816; see also id. ("Unity of interest and ownership can also be demonstrated by showing domination and control of a corporation, as in a parent-subsidiary relationship or in a closely held corporation.").

Here, there is no evidence of a "unity of ownership and interest" between Comcast Management and Comcast of Potomac.  Neither owns any part of the other entity.  See Kane Decl. at 2.  Moreover, "[t]he staff and funding of Comcast of Potomac are utilized for the business of providing and supporting cable service and other services to subscribers in Montgomery County, Maryland and Arlington and Alexandria, Virginia" -- "[n]o other Comcast entity shares that business purpose."  Id.  And only Comcast Management, as the entity that operates the Comcast websites, "is responsible for inputting and maintaining all of the content on the website[s]."  Id.  "The only information that Comcast of Potomac provides for the website is

the particular channel lineups and pricing information that Comcast of Potomac offers in its local service areas." Id. at 4. That Comcast of Potomac and Comcast Management may provide related services does not demonstrate a unity of ownership and interest. See Jackson, 944 A.2d at 1096. Nor is there evidence that Comcast Management and Comcast of Potomac disregard corporate formalities. Comcast of Potomac does not "share staff or property" with Comcast Management, and "each entity has separate budgets and separate funds." Kane Decl. at 2 The evidence does not show, for example, that either entity commingles its funds and assets with the other entity's funds and asserts, or diverts the other entity's funds for its own uses. See Shapiro, Lifschitz & Schram, 90 F. Supp. at 23 (citing Labadie Coal Co. v. Black, 672 F.2d 92, 97 (D.C. Cir. 1982)).

To be sure, Comcast of Potomac indicates that thirty-three of its officers also serve as officers of Comcast Management. See Kane Decl. at 2. But the mere fact that the entities share officers is insufficient, by itself, to demonstrate that Comcast of Potomac and Comcast Management are alter egos. See Diamond Chem. Co., Inc. v. Atofina Chems., Inc., 268 F. Supp. 2d 1, 9 (D.D.C. 2003) ("The Supreme Court has recognized that 'it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary acts.'" (quoting United States v. Bestfoods, 524 U.S. 51, 69 (1998))).[5]

---

[5] Nevertheless, Tall states that Comcast Management shares the same president, vice president, treasurer, and secretary with Comcast of Potomac's parent company, and therefore "it would not be credible" to assert that Comcast Management and Comcast of Potomac "somehow operate independently." Pl.'s Response to Third Kane Aff. ("Pl.'s Response") [Docket Entry 21], at 2-3. But the mere fact that Comcast Management may share executives with Comcast of Potomac's parent company says nothing about the relationship between Comcast Management and Comcast of Potomac. And, in any event, shared executives, by itself, does not demonstrate

Accordingly, the evidence demonstrates that there is no unity of ownership and interest or a disregard for corporate formalities between Comcast of Potomac and Comcast Management. Moreover, Tall nowhere suggests that injustice will result if the Court treats Comcast of Potomac and Comcast Management as separate entities. Indeed, the Court's determination that the entities are not alter egos does not prevent Tall from bringing suit against Comcast of Potomac -- in Maryland. See Jackson, 944 A.2d at 1096 (no injustice where plaintiff can refile his action against the defendant in another jurisdiction). Accordingly, the Court concludes that Comcast of Potomac and Comcast Management are not alter egos.

B. Agency

"'[A]n agency relationship results when one person authorizes another to act on his [or her] behalf subject to his [or her] control, and the other consents to do so.'" Henderson v. Charles E. Smith Mgmt., Inc., 567 A.2d 59, 62 (D.C. 1989) (quoting Smith v. Jenkins, 452 A.2d 333, 335 (D.C. 1982)) (second and third alterations in Smith). In other words, "the court must look for evidence of the parties' consent to establish a principal-agent relationship," and "for evidence that the activities of the agent are subject to the principal's control." Id. "Relevant factors 'include (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is part of the regular business of the employer.'" Jackson, 944 A.2d at 1097 (quoting Judah v. Reiner, 744 A.2d 1037, 1040 (D.C. 2000)).[6]

---

that two corporations are alter egos. See Diamond. Chem. Co., 268 F. Supp. 2d at 9.

[6] Although "[t]he existence of an agency relationship is a question of fact, for which the person asserting the relationship has the burden of proof," Henderson 567 A.2d at 62, "the issue of personal jurisdiction is for the court, not the jury, to decide," Gonzalez v. Internacional de

Here, the undisputed evidence in the record demonstrates that Comcast of Potomac has no ability to control Comcast Management, especially with regard to advertising decisions. Comcast Management "controls the purposes for which <comcast.com> is used, as well as the content, format, style, and overall design of the website." Kane Decl. at 1-2. And "[t]he only information that Comcast of Potomac provides for the website is the particular channel lineups and pricing information that Comcast of Potomac offers in its local service areas." Id. at 4. Moreover, it is Comcast Management that "create[s] national advertising campaigns." Id. "[L]ocal operating entities such as Comcast of Potomac [may only decide] whether or not to participate in those campaigns." Id. In other words, Comcast of Potomac is a passive participant in Comcast Management's advertising decisions. Although Comcast of Potomac and Comcast Management appear to be "engaged in a common enterprise," mutuality of interest "does not establish that either was an agent of the other." Jackson, 944 A.2d at 1098.

*   *   *   *   *

Without any evidence that Comcast of Potomac and Comcast Management are alter egos, or that Comcast Management is Comcast of Potomac's agent, the Court lacks personal jurisdiction over Comcast of Potomac.

## II.     Equifax and the Credit Protection Association

Tall also suggests that Equifax and the Credit Protection Association act in the District of Columbia as Comcast of Potomac's agents, and therefore provide the persistent course of conduct necessary for the Court to exercise personal jurisdiction over Comcast of Potomac pursuant to

---

Elevadores, S.A., 891 A.2d 227, 237 (D.C. 2006). This is so "regardless of the theory on which the plaintiff urges the court to exercise such jurisdiction." Id.

section 13-423(a)(4). This is incorrect. The undisputed evidence in the record demonstrates that both Equifax and the Credit Protection Association "ha[ve] authority over, and responsibility, for [their] actions in the District of Columbia." Kane Decl. at 7, 8; see also id. at 6, 7 (Equifax and the Credit Protection Association are "national vendor[s] that provide[] services to Comcast Cable Communications Management LLC affiliates, including Comcast of the Potomac").[7] In other words, there is no evidence that Comcast of Potomac controls Equifax's or the Credit Protection Association's activities in the District. See Henderson, 567 A.2d at 62. Nor does Tall suggest otherwise. Hence, Equifax's and the Credit Protection Association's activities in the District of Columbia provide no basis for this Court to exercise personal jurisdiction over Comcast of Potomac.[8]

**CONCLUSION**

For the foregoing reasons, the Court will grant Comcast of Potomac's motion to dismiss for lack of personal jurisdiction, and will deny Tall's request for jurisdictional discovery.[9] A

---

[7] There seems to be an error the Kane declaration, as it refers to Equifax in responding to a question about the Credit Protection Association. See Kane Decl. at 7. Although Tall asks the Court to characterize this error as a "deliberate attempt to obstruct Justice," Pl.'s Response at 3, it appears to be a simple typographical error.

[8] And there is no evidence to support an argument that Equifax and the Credit Protection Association are alter egos of Comcast of Potomac. See Kane Decl. at 6-8. Indeed, Comcast of Potomac does not share funds, staff, or property with either entity, it does not have any corporate officers or directors in common with either entity, and it does not own a percentage of either company. See id. Nor does Equifax or the Credit Protection Association own a percentage of Comcast of Potomac. See id. Hence, none of the indicia of "unity of ownership or control" or a disregard of corporate formalities is present. See Jackson, 944 A.2d at 1095.

[9] Because the undisputed evidence demonstrates that Comcast of Potomac does not act in the District through another entity for purposes of section 13-423(a)(4), further jurisdictional discovery is unnecessary. See Fasolyak v. The Cradle Soc'y, Inc., Civ. A. No. 06-01126, 2007 WL 2071644, *10 (D.D.C. July 17, 2007) ("[I]t is not error to deny jurisdictional discovery when

-11-

separate Order will be issued on this date.

/s/
JOHN D. BATES
United States District Judge

Date: August 9, 2010

---

the record indicates there is nothing to be gained from the effort."). Indeed, Tall does not suggest in his response to the Kane declaration that further jurisdictional discovery is warranted.